IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KAREN L. S.,[1] | ) |
|         Plaintiff, | ) |
| v. | ) Case No. 19-cv-1187-RJD[2] |
| COMMISSIONER of SOCIAL SECURITY, | ) |
|         Defendant. | ) |

## MEMORANDUM and ORDER

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability benefits in September 2016, alleging disability as of August 30, 2016. After holding an evidentiary hearing, an ALJ denied the application on November 14, 2018. (Tr. 17-29). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 10 & 15.

**Issues Raised by Plaintiff**

Plaintiff raises the following points:

1. The ALJ failed to properly evaluate opinion evidence.

**Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show that there are jobs existing in significant numbers in the national economy which the plaintiff can perform. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. He determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. She is insured for DIB through December 31, 2021.

The ALJ found that Plaintiff had severe impairments of obesity, obstructive sleep apnea, and degenerative disc disease.

The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work, except she "can frequently climb ramps and stairs; never climb ladders, ropes, and scaffolds; and occasionally stoop, kneel, crouch and crawl." Based on the testimony of a vocational expert (VE), the ALJ concluded that Plaintiff was unable to do her past work yet concluded there are jobs

that exist in significant numbers in the national economy that Plaintiff can perform.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to Plaintiff's arguments.

### 1.  Agency Forms

Plaintiff was born in 1964 and was three days shy of turning 54 years old on the date of the ALJ's decision. (Tr. 217). Plaintiff said she stopped working in August 2016 because of her conditions. She worked as a hotel housekeeper in 2005 and a healthcare home maker from September 2010 to August 2016. (Tr. 221-22).

In a Function Report submitted in October 2016, Plaintiff said she cannot stand for more than five to ten minutes without back pain that radiates to her legs. Plaintiff said if she sits for more than twenty to thirty minutes then she cannot stand up straight due to back and leg pain. Plaintiff said her only relief is lying on her back. Plaintiff said her husband and daughter take her dogs for walks and potty breaks, and her daughter cooks and cleans. Plaintiff said she cannot stand long enough to cook a full meal, and she does some laundry. Plaintiff said she does not do house or yard work, cannot ride a motorcycle, and cannot attend kids' sports games because of her back. Plaintiff said her impairments affect her lifting, squatting, bending, standing, walking, sitting, kneeling, and stair climbing. Plaintiff said she can walk one block before needing a five to ten-minute break. (Tr. 239-44).

### 2.  Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing in July 2018. (Tr. 43,

62).  Plaintiff said she left her job at Addus Healthcare because her back issues were so bad that she had to sit down every ten to fifteen minutes, and her doctor took her off work without later releasing her to return.  Plaintiff said she underwent bariatric surgery, yet that failed to give her much relief in her back.  Plaintiff said she does laundry, sweeps, mops, and will do the dishes every now and then.  Plaintiff said she does not vacuum, dust, clean the bathrooms, or do yard work.  Plaintiff said her back pain makes it so she cannot stand on her feet for more than five or ten minutes, and she cannot sit for very long.  Plaintiff said the only thing that provides relief is lying down, and she does that about every fifteen to twenty minutes.  (Tr. 45-50).

The VE testified that a person with Plaintiff's RFC could not do her past work.  (Tr. 53). The ALJ presented hypotheticals to the VE which corresponded to the ultimate RFC findings. The VE testified this person could do jobs such as mail clerk positions, cashier positions, and retail sales positions.  (Tr. 53).

### 3.     Relevant Medical Records

Plaintiff presented to Naresh Kumar Ahuja, a surgeon, on May 1, 2014.  (Tr. 863).  A physical examination revealed normal musculoskeletal range of motion, muscle strength, and stability in all extremities with no pain on inspection.  (Tr. 866).

Plaintiff presented to Amy Goetz, a physician assistant, on May 21, 2014.  (Tr. 876).  A physical exam revealed normal musculoskeletal range of motion, muscle strength, and stability in all extremities with no pain on inspection.  (Tr. 879).

Plaintiff presented to Jeffrey Parks, a family medicine physician, over fifteen times between October 2015 and May 2018.  (Tr. 418, 421, 423, 426, 456, 466, 503, 681, 683, 697, 699, 701, 709, 718, 809, 817, 835).  Plaintiff reported low back pain that radiates down her legs; an

inability to work, clean, stand or sit too long, or partake in activities of daily living; relief only from lying down; no improvement with physical therapy; and wanting to see a thyroid doctor to lose weight.  (Tr. 418, 456, 466, 681, 683, 701, 709, 718, 809, 817).  At various appointments, Dr. Parks noted negative physical examinations; no musculoskeletal issues; no vertebral tenderness to palpation; full range of motion of the spine and extremities; a negative straight leg raise to forty-five degrees; and normal heel and toe standing.  (Tr. 419, 422, 424, 427, 457, 467, 682, 684, 699, 702, 719, 810, 818).  At one appointment, Dr. Parks noted L5 flexion to forty-five degrees with complaints of pain.  (Tr. 711).  The assessments included low back pain and obesity.  (Tr. 419, 424, 457, 467, 682, 684, 698, 703, 711, 719, 811).  Plans included medication; physical therapy; Social Security application advisement; blood tests; follow-up appointments; epidural injections; an obesity referral; a dietician consultation; and bariatric surgery.  (Tr. 424, 457, 468, 682, 684-85, 698, 703, 711, 719, 811).  Dr. Parks issued work notes stating Plaintiff should refrain from work due to her back pain.  (Tr. 419, 819).

Plaintiff underwent a lumbar spine x-ray on August 30, 2016, and the impression was, "Chronic discogenic degenerative disease and facet arthrosis."  (Tr. 390).

Plaintiff underwent ten physical therapy appointments between August 31, 2016 and October 4, 2016, to address complications with low back pain and obesity.  (Tr. 341-45, 349-59, 361, 367-71).

Plaintiff underwent an MRI of her lumbar spine on October 11, 2016, and the impression was, "1. Lower lumbar degenerative changes as described with resulting multilevel foraminal stenoses worse on the left…"  (Tr. 334-35).

Plaintiff presented to Michael Bryant, a physician assistant, at the Brain & Spine Institute

on November 1, 2016, reporting low back pain for over ten years; an ache and fatigue-type sensation across her lower lumbosacral region that radiates into her bilateral lower extremities; decreased pain with sitting down; and exacerbation of pain with standing, bending, lifting and walking. (Tr. 482). PA Bryant noted mild tenderness to palpation in the lower lumbosacral region; and full active range of motion of the cervical and lumbar spine. (Tr. 484-85). PA Bryant personally reviewed Plaintiff's MRI from October 2016 and said, "very mild degenerative changes noted on the MRI scan." The assessment included lumbar spondylosis, and plans included continuation with conservative care and a pain management appointment for injection therapy. (Tr. 485).

Plaintiff presented to Gerson Criste, a physician at the Brain & Spine Institute, on November 16, 2016, reporting an aching and numb-feeling back and bilateral leg pain that is moderate in severity. (Tr. 493). Dr. Criste noted a normal physical exam. The assessment included lumbar spondylosis, and plans included continuing with exercises, medications and follow-ups because Dr. Criste did not think Plaintiff was ready for any aggressive spine intervention. (Tr. 496).

On December 6, 2016, Dr. Parks wrote a letter at Plaintiff's request for use by her attorney, saying:

> You can sit for 15-20 minutes without changing positions,[sic] You can stand for 10 minutes without sitting down,[sic] You can walk for 5 minutes without sitting down,[sic] When you rest from standing and walking you must lie down,[sic] When you take a rest break you usually have to lay down for 90 minutes,[sic] These rest breaks are necessary more than three times per day.

(Tr. 503).

Plaintiff presented to Charli Smith, a family medicine physician, on March 7, 2017, and a

musculoskeletal physical examination was negative. (Tr. 813-15).

Plaintiff presented to Lisa Arnold, a nurse practitioner at the Brain & Spine Institute, on March 17, 2017, reporting persistent low back pain that radiates into her legs and is aggravated by walking; extremity weakness; gait disturbance; and numbness in her extremities. (Tr 849, 852). A physical examination revealed morbid obesity, lumbar spine tenderness, and increased pain with extension. The assessment included lumbar spondylosis, and plans included steroid injections. (Tr. 853-54).

Plaintiff underwent a pain management injection to address lumbar spondylosis on May 30, 2017. (Tr. 650).

Plaintiff presented to Robin Gallo, a physician assistant, on June 22, 2017, reporting moderately severe leg cramps that happened mostly at night. (Tr. 530). A physical examination revealed no swelling or deformity to the lower legs and very mild calf tenderness. (Tr. 532).

Plaintiff presented to Dr. Smith on June 28, 2017, reporting bilateral leg cramps that are moderate in severity; arthralgias; and a gait problem. A physical examination revealed tenderness throughout all bilateral leg muscles. The assessment included bilateral leg cramps, and plans included medications. (Tr. 678-80).

Plaintiff presented to NP Arnold on January 16, 2018, reporting constant back pain that radiates down her bilateral lower extremities and is aggravated by any activity such as sitting, standing and walking. Plaintiff said her pain is improved with lying flat on her back and the injections provided no relief. (Tr. 855). A physical examination was normal. The assessment included lumbar spondylosis and degenerative disc disease, and plans included walking, light exercises for core strengthening, and stretching for her back. (Tr. 857).

Plaintiff presented to Sajid Mehmood, a family medicine physician, on January 24, 2018, for a weight loss management consultation. Plaintiff said she tried to use a treadmill, but it did not work, and she has low back pain and spinal stenosis. (Tr. 685). A physical examination revealed Plaintiff had normal range of motion. The assessment included obesity and chronic back pain, and plans included a referral for surgery, a referral for nutrition services, and testing. (Tr. 689-90). Dr. Mehmood recommended better eating habits; brisk walking; counting steps to at least 10,000 per day; and doing at least one hundred fifty minutes of moderate physical activity per week to lose weight. (Tr. 694-95).

Plaintiff presented to Dr. Ahuja on February 21, 2018, reporting arthralgias, back pain, and failing at her attempted weight loss strategies. (Tr. 884, 887). A physical examination revealed obesity. The assessment included morbid obesity, and plans included bariatric surgery, diet changes, and exercising. (Tr. 888-89).

Plaintiff presented to Dr. Mehmood on March 6, 2018, for a weight management follow-up. Plaintiff reported walking two miles a day, changing her diet, and doing yoga. (Tr. 703-04). A physical examination revealed normal range of motion. The assessment included obesity, and recommendations included losing weight, walking for exercise, and diet changes. (Tr. 707-08).

Plaintiff presented to Stacy Menees, a nurse practitioner, on March 21, 2018, for a bariatric surgery pre-operation evaluation. Plaintiff reported doing exercises such as upper body exercises for thirty minutes, four days a week but failing at attempting weight loss. (Tr. 534). A physical exam revealed Plaintiff was obese and had normal range of motion. The assessment included morbid obesity due to excess calories, and plans included weight loss through diet changes, a structured exercise regimen, and attending support group meetings. (Tr. 537-39).

On April 3, 2018, Dr. Parks said Plaintiff failed epidural injections and said, "She is medically disabled from her lower back syndrome and I offered to assist her attorney in this pursuit." (Tr. 711).

Plaintiff presented to Dr. Mehmood on April 10, 2018, for weight management and to prepare for bariatric surgery. Plaintiff said she did twenty minutes of walking on a treadmill five days a week. (Tr. 711-12). A physical examination revealed normal musculoskeletal range of motion. The assessment included obesity, and plans included diet management, doing brisk walking, and doing more physical activity such as one hundred fifty minutes of moderate physical activity per week. (Tr. 715-17).

Plaintiff presented to Dr. Ahuja on May 9, 2018, for pre-surgery evaluation and education. Plaintiff reported attending a bariatric surgery seminar; wanting to pursue bariatric surgery; doing lower body exercises thirty minutes for five days a week; arthralgias; and back pain. (Tr. 548, 551). The physical examination revealed obesity. The assessment included morbid obesity, and plans included bariatric surgery. (Tr. 552-53).

Plaintiff presented to Dr. Mehmood on May 10, 2018, reporting walking and riding bikes every day for ten minutes, three times and fatigue from obesity. (Tr. 721). A physical examination was negative. The assessment included obesity, and plans included bariatric surgery, diet, and exercise. Dr. Mehmood recommended diet management and at least one hundred fifty minutes of moderate physical activity per week. (Tr. 725-27).

Plaintiff underwent bariatric surgery on May 22, 2018. (Tr. 559).

Plaintiff presented to NP Menees on May 30, 2018, for an evaluation after bariatric surgery. (Tr. 933). A physical examination revealed normal musculoskeletal range of motion. Plans

included diet advancement and attending support group meetings.  (Tr. 936-37).

On May 31, 2018, Dr. Parks did a physical RFC assessment.  Dr. Parks said Plaintiff has pain in her lower back that radiates down both of her legs and knees.  Dr. Parks said Plaintiff would need to elevate one or both of her legs and lie down in the supine position during an eight-hour shift.  Dr. Parks noted Plaintiff would be able to sit, stand, and walk only zero to one hours.  Dr. Parks noted Plaintiff can occasionally lift no more than ten pounds and can never lift greater than ten pounds.  Dr. Parks said Plaintiff is likely to be absent from work more than three times a month due to her impairments.  (Tr. 835-36).

## **Analysis**

Plaintiff asserts the ALJ erred in giving very little weight to the treating physician's opinion without consideration of the regulatory factors applicable to opinions not given controlling weight.  Dr. Parks was Plaintiff's treating physician, but the ALJ was not required to fully credit Dr. Parks's opinion because of that status; "while the treating physician's opinion is important, it is not the final word on a claimant's disability."  *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (internal citation omitted).  A treating source's medical opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record.  *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016), citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

Plaintiff filed her application before March 27, 2017.  The applicable regulation, 20 C.F.R. § 404.1527(c)(2), provides, in part:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective

> medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

If the ALJ decides not to give the opinion controlling weight, he is to weigh it applying the factors set forth in § 404.1527(c)(1)-(6). Supportability and consistency are two important factors to consider in weighing medical opinions. In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques [,]' and (2) it is 'not inconsistent' with substantial evidence in the record." *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010).

Here, the ALJ explained that he gave little weight to Dr. Parks's opinion as it is deficient partially because it is inconsistent with the preparations Plaintiff participated in before bariatric surgery. The ALJ said, "Additionally, this opinion is inconsistent with Dr. Parks's examinations of the claimant that were generally unremarkable…this opinion is inconsistent with other treating sources that documented her degenerative disc disease as mild, and further evaluated her functioning as generally unremarkable." (Tr. 27). The ALJ further explained his reasoning at Tr. 27 saying Dr. Parks's opinion seems only based on Plaintiff's subjective statements. Dr. Parks filled out an impairment questionnaire form that was made of many questions with checkboxes and left little room for thorough explanation of his opinion. (Tr. 835-36). It is not error to reject a treating physician's opinion that consisted of checkmarks on a form in which there were minimal to no open-ended questions and in which it was reliant on the plaintiff's subjective complaints. *Apke v. Saul*, No. 19-2582, 2020 WL 4018988, at *3-4 (7th Cir. July 16, 2020). Defendant argues

that the ALJ was not required to accept Dr. Parks's conclusions, and this Court agrees.

Plaintiff's argument ignores much of the ALJ's discussion. In general, she argues that the ALJ neither explained enough of the inconsistencies found nor did he apply the checklist of factors provided by 20 C.R.F. § 404.1527. The ALJ need not explicitly discuss each factor of the checklist, and some are implied simply within the discussion of medical records. See *Henke v. Astrue*, 498 Fed.Appx. 636 (7th Cir. 2012). The ALJ did discuss, although not at length, treatment provided by Dr. Parks regarding Plaintiff's impairments at Tr. 26 and Tr. 27. This, along with the abovementioned discussion by the ALJ, demonstrates the ALJ's consideration of the examining relationship, the treatment relationship, and other factors specified in § 404.1527.

In light of the deferential standard of judicial review, the ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). Although the ALJ did not specifically indicate each factor as he considered them, the ALJ met the minimal articulation standard here. The ALJ's discussion illustrates that the treatment records do not support the treater's opinion. For example, he pointed out that Plaintiff had unremarkable physical examinations with Plaintiff having no tenderness to palpation of the lumbar spine, full range of motion, a normal gait, normal coordination, occasional muscle spasms and more, which does not support the findings and severity of those findings by Dr. Parks.

Furthermore, Plaintiff argues that the ALJ failed to mention certain medical evidence and focused too heavily on Plaintiff's activities of daily living.

The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss

every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Moreover, the ALJ must "engage sufficiently" with the medical evidence. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). The ALJ "need not provide a complete written evaluation of every piece of testimony and evidence." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) (citation and internal quotations omitted). However, the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009), internal citations omitted. The ALJ "cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

Plaintiff argues that the ALJ failed to recognize that an MRI from October 2016 showed additional issues than the ALJ expressed. However, the ALJ's statement of that MRI came directly from the radiologist's "Impression" section of the report. (Tr. 335). Plaintiff is correct that there were particular specificities within the medical records the ALJ did not mention or discuss, specifically regarding physical therapy records. However, Plaintiff's argument fails. As stated above, and as argued by Defendant, the ALJ is not required to discuss every bit of evidence. The ALJ is only required to sufficiently engage with the medical evidence, thereby providing a logical bridge between the medical evidence and the ALJ's decision. What Plaintiff is asking the ALJ to do is discuss, at length, the objective and subjective medical evidence from Plaintiff's physical therapy appointments. Here, the ALJ mentioned, although somewhat briefly at times, both positive and negative findings within both the objective and subjective medical records. The

ALJ was not required to discuss these findings any further.

"An ALJ may not equate activities of daily living with those of a full-time job…But an ALJ is not forbidden from considering statements about a claimant's daily life." *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020). An ALJ may consider the claimant's activities of daily living to determine whether the claimant's symptoms are as high in severity as alleged. *Id*. at 593.

Plaintiff is correct that the ALJ referred to Plaintiff's activities of daily living in his decision, specifically her exercise routine to lose weight for bariatric surgery. However, Plaintiff is incorrect in her assertion that the ALJ put too much focus on her activities of daily living. As the Seventh Circuit indicated in *Jeske*, an ALJ is not forbidden from considering activities of daily living. The ALJ just cannot use that information and equate it to full-time work. Here, the ALJ did not equate Plaintiff's activities of daily living to full-time work. The ALJ simply referred to Plaintiff's activities of daily living to formulate his understanding of Plaintiff's condition, while considering other things such as subjective statements, objective opinions and findings, and imaging studies. Therefore, the ALJ did not err as Plaintiff suggests.

Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence. She has not identified a sufficient reason to overturn the ALJ's conclusion. Even if reasonable minds could differ as to whether Plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester*, 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ

committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED: August 12, 2020**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**